IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BAR J SAND AND GRAVEL, INC.,

       Plaintiff,

vs.                                                                          No. CIV 05-800  JB/WPL

WESTERN MOBILE NEW MEXICO, INC.,
LAFARGE NORTH AMERICA, INC., and
LAFARGE SOUTHWEST, INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand, filed August 18, 2005 (Doc. 12).  The Court held a hearing on this motion on September 15, 2005.  The primary issues are: (i) whether a federal question exists such that the Court can exercise subject-matter jurisdiction over this case; and (ii) whether Plaintiff Bar J Sand and Gravel, Inc. ("Bar J") is entitled to attorney's fees.  Because a federal question is not present on the face of the well-pleaded Complaint, the Court will grant Bar J's motion to remand to state court.  Furthermore, the Court will grant Bar J's motion for attorney's fees because Bar J has shown that removal was improper.

## FACTUAL BACKGROUND

On October 28, 1995, the Pueblo of San Felipe issued a Sand and Gravel Permit ("Permit") to Bar J Trucking, Inc.  See Sand and Gravel Permit at 1, 11, dated October 28, 1996.  The Permit granted Bar J Trucking the right "to remove sand and gravel from" the Pueblo's lands.  See id. at 1. In exchange, Bar J Trucking obligated itself to pay one dollar "per ton for all sand and gravel removed from the premises during the term of this Permit and for any extension thereof."  Id.  Bar

J Trucking also agreed "to abide by and conform to any and all regulations of the Secretary of the Interior now or hereafter in force." Id. at 3.  The Permit forbade Bar J Trucking from "assign[ing] this Permit or any interest therein by an operating agreement or otherwise, nor to sublet any portion of the Premises, except with the written approval of the [Pueblo of San Felipe] and the Secretary of the Interior or his/her authorized representative." See id. at 3.  Bar J Trucking Inc. and Bar J agreed on July 24, 1996 that Bar J would have "the exclusive right to excavate, remove and sell aggregate . . . from land . . . located within the Pueblo." See Exclusive Supply Agreement ("ESA") at 1, dated September 5, 2001.

Bar J and Western Mobile New Mexico, Inc. ("Western Mobile") entered into an Exclusive Supply Agreement ("ESA") on September 5, 2001, with a term of 10 years.  See id. at 1, 3.  Bar J contracted "to sell on an exclusive basis to [Western Mobile], . . . during the Term of this Agreement a minimum of 500,000 tons of Material per year." Id. at 2.  Western Mobile promised in turn to purchase the same quantity from Bar J.  See id.  Western Mobile bound itself to pay "a rate of $2.20 per ton . . . for all Material mined or extracted and removed from the Premises during each calendar month, with a minimum of 41,667 tons per month." Id. at 5.  The ESA recognized that Western Mobile would "be entitled to use the Premises for the purpose of excavating, processing . . . and removing a minimum of 500,000 tons per year of purchased Material from the Premises" and that a failure to do so would lead to a default under the contract.  Id. at 4, 22.

The ESA stated that the Permit "is not assigned and [Western Mobile] has no right, title or interest in the Permit." Id. at 1.  Hammering the point home, the ESA again said that "[Bar J and Western Mobile] wish to enter into this Agreement which is not an assignment of the Permit." Id. Also, the ESA noted that

> [Western Mobile] agrees that the express condition precedent to any and all provisions in the [ESA] is compliance with and the fulfillment of all terms and conditions of the Permit, and therefore, should the Pueblo for whatever reason, or no reason, terminate the Permit, [Bar J] and [Western Mobile] will be bound to the terms of [the ESA] only to the last date the Permit is in effect.

Id. at 2.  Finally, the ESA contained a severability clause which provided that "[i]f any provision of this Agreement or of any document contemplated hereby shall be invalid, such invalid provision shall be severable, and such invalidity shall not impair the validity of any other provision of this Agreement or of any document contemplated hereby."  Id. at 30.

## PROCEDURAL BACKGROUND

Bar J sued Western Mobile, Lafarge North America, Inc., and Lafarge Southwest, Inc. ("the Defendants") in the Second Judicial District Court of New Mexico on April 29, 2005 for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade practices.  See Notice of Removal at 1, filed July 25, 2005 (Doc. 1).  Bar J alleges that Western Mobile assigned its rights under the ESA to Lafarge Southwest without Bar J's permission.  See Complaint ¶ 14, at 3.  Bar J contends that thereafter Western Mobile and Lafarge Southwest failed to mine the amount upon which the parties had agreed in the ESA.  See id.  According to Bar J, Lafarge North America thereafter repudiated the ESA.  See id. ¶ 15, at 3.  Bar J contends the repudiation breached the ESA. See id. ¶¶ 19-27, at 4-5.

Bar J also asserts that the Defendants' actions violated the covenant of good faith and fair dealing because they intended  "to cause Bar J permanent damage with respect to its loss of existing customers and good will."  Id. ¶¶ 28-32, at 5-6.  Finally, Bar J accuses the Defendants of unfair trade practices because they "persuaded Bar J to enter into the [ESA] by promising that Defendants had a large market available and planned to greatly expand the Bar J gravel pit to produce 900,000 tons

of material per year" without any intention of doing so.  <u>Id.</u> ¶¶ 33-43, at 6-7.

On July 25, 2005, the Defendants filed a Notice of Removal in the United States District Court for the District of New Mexico, removing the case to federal district court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.  <u>See</u> Notice of Removal at 2.  The Defendants assert that Bar J's cause of action rests on the presumption that the ESA is valid.  <u>See</u> <u>id.</u>  The Defendants argue that the ESA is invalid because it attempted to assign Bar J's rights under the Permit to the Defendants without the Secretary of the Interior's permission, as the Permit required. <u>See</u> <u>id.</u> at 4.  Because the contract purported to do something that could not be done under the terms of the Permit and federal regulations, the ESA itself is allegedly void and unenforceable.  <u>See</u> <u>id.</u>  The Defendants explain that from this line of argument arises a federal question: whether the assignment under the ESA was proper under federal law.  <u>See</u> <u>id.</u> at 5.

On August 1, 2005, the Defendants filed an answer that alleged counterclaims against Bar J for intentional or negligent misrepresentation, breach of contract, violation of the Unfair Practices Act, and for declaratory relief.  <u>See</u> Defendants' Answer to Complaint for Damages for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Unfair Trade Practices, and Restraint of Trade and Counterclaim for Misrepresentation, Breach of Contract, Violation of Unfair Practices Act and Declaratory Judgment, filed August 1, 2005 (Doc. 3).  Specifically, the Defendants asserted that Bar J had: (i) misrepresented the Permit's length and conditions; (ii) breached the ESA by misrepresenting the contract's key aspects; and (iii) violated the Unfair Practices Act by misrepresenting that all necessary approvals of the ESA had been obtained.  <u>See</u> <u>id.</u> ¶¶ 34-59, at 15-18.

On August 18, 2005, Bar J filed a Motion to Remand the case to state court.  Bar J argues

that, on its face, the Complaint states a mere breach of contract case, in which state law is controlling and no federal question presents itself.  <u>See</u> Memorandum Brief at 2, filed August 18, 2005 (Doc. 13).  Bar J argues that the Defendants' contention that the ESA is invalid because it illegally assigned the Permit to the Defendants is no more than a defense raising a federal issue.  <u>See id.</u> at 3.  Bar J contends that whether the ESA legally assigned rights under the Permit to the Defendants is irrelevant to establishing the Defendants' breach of the ESA because the ESA does not assign the Permit to the Defendants.  <u>See id.</u> at 6-7.

Further, Bar J distinguishes this action from the Supreme Court of the United States' recent decision in <u>Grable & Sons Metal Products v. Darue Engineering & Manufacturing</u>, 125 S. Ct. 2363 (2005).  <u>See</u> Memorandum Brief at 8.  Bar J explains that the plaintiff in <u>Grable</u> "premised its claim on a point of federal law."  <u>Id.</u>  Bar J argues that the ESA did not require approval of an assignment pursuant to federal law to be valid, and thus Bar J does not premise its claim on any point of federal law.  <u>See id.</u>

Bar J additionally points out that, even if the assignment's validity were at issue in its suit, state law would still determine whether the contract was actually breached.  <u>See id.</u> at 9.  Bar J highlights a lack of a "substantial federal question or serious interest" because the case only "involves interpretation of a contract pursuant to New Mexico law."  <u>Id.</u> at 12.  Finally, Bar J asks for attorney's fees under 28 U.S.C. § 1447(c).  <u>See id.</u> at 13.

The Defendants filed their Response to the Motion to Remand on September 7, 2005.  The Defendants reiterate that "an essential element of Plaintiff's cause of action and an issue squarely within the Plaintiff's Complaint" is whether the ESA was a valid contract.  <u>See</u> Response at 2, filed September 7, 2005 (Doc. 22).  First, an express condition of the ESA was the existence of the Permit.

See id. at 3-4.  The Permit only exists if Bar J complied with federal regulations that govern the issuance of such a Permit, which is a federal question.  See id. at 4.  Second, the ESA's alleged assignment of the Permit requires reference to federal regulations to see if it complied with federal law requiring that the Secretary of the Interior approve assignments.  See id. at 4.

The Defendants maintain that the ESA's assignment amounted to an illegal contract and that therefore the ESA's provision disclaiming an assignment should be disregarded.  See id. at 5.  The Defendants also take the Grable decision to mean that there is "a limited or qualified exception to the well-pleaded complaint rule" and that this dispute qualifies for this exception.  See id. at 8.  According to the Defendants, this case raises "a substantial question of federal Indian law" and hearing this case in federal court is consistent with Congress' judgment about the proper role of federal courts because of the "complex regulatory scheme to govern the extraction of minerals on Indian land" that Congress has created.  See id. at 11.  The Defendants request that the Court deny  attorney's fees to Bar J because they acted in good faith with a fair basis   --  Grable  --  for asserting federal question jurisdiction.  See id. at 12.

Bar J filed its Reply on September 14, 2005.  Bar J reaffirms that its complaint sets forth only a state-law breach of contract claim based on the Defendants' termination of the ESA.  Reply at 2, filed September 14, 2005 (Doc. 27).  Bar J asserts that it is not required to deny possible defenses to establish its cause of action.  See id. at 5-6.  Also, Bar J is not asking the Court to declare any assignment valid, thus not invoking federal law on assignments of mineral rights.  See id. at 3-4. Furthermore, Bar J contends that the ESA's severability clause would sever any offending assignment and the rest of the contract would have to be interpreted under state law.  See id. at 6.  Bar J also argues that the Defendants do not have standing to complain about any improper assignments.  See

-6-

id. at 7-8.  Finally, Bar J contends that its request for attorney's fees is proper because "removal was directly contrary to clearly established precedent."  Id. at 8.

The Court held a hearing on this motion on September 15, 2005.  Bar J stated that the Permit would be at issue only if the Court found the ESA to be an assignment.  See Transcript of Hearing at 6:1-9 (taken September 15, 2005).[1]  Bar J argued that the ESA's "clear and unambiguous language" indicated that it was not an assignment.  Id. at 6:25-7:4.  Finally, Bar J challenged any notion that it had to prove bad faith to secure attorney's fees.  See id. at 10:6-24.

The Defendants assured the Court that they removed only because of the alleged "sea change" wrought by the Supreme Court's recent decision in Grable.  See id. at 12:25-13:5.  The Defendants conceded that removal before Grable would "certainly be a very thin reed of the standard."  Id. at 13:5-8.  The Defendants stated that the Court could find as a matter of law that the ESA was an assignment and that it is void because the Secretary of the Interior never approved it.  See id. at 17:9-12.  The Defendants also stated their belief that "approving mineral leases on Indian lands is a very, very important federal interest."  Id. at 17:16-17.  The Defendants also affirmed that recognizing this kind of cause of action as a federal question will not "open [the] floodgates of  litigation in the federal courts," because this issue is "a very, very narrow problem."  Id. at 18:11-16.

## LAW REGARDING REMOVAL

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."  Pritchett v. Office Depot, Inc., 404 F.3d 1232, 1235 (10th Cir. 2005)(citing Shamrock Oil

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

& Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), and United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "[A]ll doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982) (citing Greenshields v. Warren Petroleum Corp., 248 F.2d 61, 65 (10th Cir. 1957)).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

A defendant may remove a state civil action "to the district court of the United States for the district and division embracing the place where such action is pending" if the federal district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  The Tenth Circuit has held that, to support removal jurisdiction, "the required federal right or immunity must be an essential element of the plaintiff's cause of action, and that the federal controversy must be 'disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'"  Madsen v. Prudential Federal Savings & Loan Assn., 635 F.3d 797, 800 (10th Cir. 1980)(citing Gully v. First National Bank, 299 U.S. 109, 113 (1936)).  As the removing party, the defendant bears the burden of proving "all jurisdictional facts and of establishing a right to removal."  Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)(citations omitted).  See also Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995)("To support removal, the defendant bears the burden of establishing federal jurisdiction over the state-court suit.")(citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)).  The plaintiff may thereafter attack removal by filing a motion in federal district court to remand the case back to state court.[2]  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996);

---

[2] 28 U.S.C. § 1447(c) mandates that "[a] motion to remand the case [from federal court to state court] on the basis of any defect other than lack of subject[-]matter jurisdiction must be made within 30 days after the filing of the notice of removal."  The Plaintiffs' motion to remand does not

Huffman v. Saul Holdings Ltd. Pshp., 194 F.3d 1072, 1076 (10th Cir. 1999)(citation omitted); 28 U.S.C. § 1447(c).

## LAW REGARDING FEDERAL QUESTION JURISDICTION

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First National Bank, 299 U.S. at 112-113). As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." Id. at 392.

The defendant may not try to sneak in a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12 (1983)). See also Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1236 (10th Cir. 2003)("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'")(quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986)). While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby

---

fall within the 30-day requirement of section 1447(c) because it is based on lack of subject-matter jurisdiction, namely federal question jurisdiction. See Memorandum Brief at 3. See also Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996)("This 30-day limit [in section 1447(c)] does not apply, however, to jurisdictional defects.").

selecting the forum in which the claim shall be litigated." Caterpillar, Inc. v. Williams, 482 U.S. at 399. Even the plaintiff can only go so far in attempting to invoke federal question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal question jurisdiction exists. Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975).

In addition to the requirement that the federal question appear on the face of the complaint, "plaintiff's cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" Nicodemus v. Union Pac. Corp., 318 F.3d at 1235 (citing Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1245 (10th Cir. 2001)). As for the second method, beyond the requirement of a substantial question of federal law at the heart of the case, the federal question must also be "contested." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 125 S. Ct. at 2367. Finally, the exercise of federal question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 2367. In particular, the Court must determine whether recognition of federal question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases traditionally heard in state courts. See id. at 2367-68, 2370-71 (teaching that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" in accepting "garden variety" state law claims). See also David L. Hanselman, *Supreme Court Federal Removal Jurisdiction*, For the Defense, September 2005, at 25, 65 ("The most important consideration is whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a

flood of original filings or removals.").

The Supreme Court of the United States has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 813. Indeed, the Supreme Court has "forcefully reiterated" that district courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Id. at 810 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. at 20); Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir. 1994).

## LAW REGARDING ATTORNEY'S FEES UNDER 28 U.S.C. § 1447(c)

28 U.S.C. § 1447(c) allows the court to "require payment of just costs and actual expenses including attorney's fees, incurred as a result of the removal." The plaintiff need not show that the Defendants acted in bad faith to win attorney's fees. See Topeka Housing Authority v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005). It is necessary only to show that the removal was improper ab initio. See id. (citing Suder v. Blue Circle, Inc., 116 F.3d 1351, 1352 (10th Cir. 1997)).

## ANALYSIS

The Court lacks federal question subject-matter jurisdiction under 28 U.S.C. § 1331 because Bar J's well-pleaded complaint does not raise a federal question. Also, the Supreme Court's recent decision in Grable does not change this conclusion. The Court further lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332. Finally, the Court awards attorney's fees to Bar J because removal was improper regardless of the Defendants' good faith in removing to the Court.

I.      <u>THE WELL-PLEADED COMPLAINT RULE BARS REMOVAL.</u>

The Court begins its examination of Bar J's motion to remand by looking, as it must, at Bar J's Complaint.  <u>See</u> <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. at 392.  On its face, the Complaint states a cause of action for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade practices.  <u>See</u> Complaint ¶¶ 19-43, at 7.  More specifically, the Complaint asserts that Bar J is entitled to relief because the Defendants breached the ESA when they repudiated it and Bar J suffered injury from that breach.  <u>See</u> <u>id.</u> ¶¶ 19-27, at 4-5.  Also, the Complaint charges that the Defendants used the ESA to attack Bar J's customer base and goodwill.  <u>See</u> <u>id.</u> ¶¶ 28-32, at 5-6. Finally, the Complaint alleges that the Defendants intentionally lured Bar J into an agreement that they had no intention of keeping to "remove Bar J as a competitor."  <u>Id.</u> ¶¶ 35-36, at 6.

None of these causes of action implicate "the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In fact, the Complaint's causes of action are little more than run of the mill state causes of action that, absent diversity of citizenship, are more properly heard in state court. Indeed, a cause of action for breach of contract will rise or fall on state common law without regard to questions of federal law.  <u>Mescalero Apache Tribe v. Martinez</u>, 519 F.2d at 481-82 ("A breach of contract claim has been held not to be a matter in controversy arising under the Constitution, laws or treaties of the United States, and hence not posing a federal question.")(citations omitted).

The Defendants argue that a federal question is apparent on the face of the Complaint because, as a necessary first step in proving a breach of contract, Bar J must show that a valid contract actually exists between Bar J and the Defendants.  <u>See</u> Response at 2.  To establish that the parties entered into a valid contract, Bar J must show that all conditions precedent were met, including Bar J's possession of a valid Permit.  <u>See</u> <u>id.</u> at 3-4.  In turn, whether Bar J acquired a valid Permit requires reference to

the federal regulations governing the issuance of those permits.  See id.  Reaching the last link in their

chain of argument, the Defendants assert that the federal question is whether the creation of the Permit

complied with those regulations.  See id.

      While the Court must be careful not to prejudge the merits in a determination of jurisdiction,

the Defendants' argument appears to mistake a condition precedent to contract *performance* with a

condition precedent to contract *formation*.  As the Supreme Court of New Mexico has indicated,

"[g]enerally, a condition precedent is an event occurring subsequently to the formation of a valid

contract, an event that must occur before there is a right to an immediate performance, before there

is breach of a contractual duty, and before the usual judicial remedies are available."  Western

Commerce Bank v. Gillespie, 108 N.M. 535, 537, 775 P.2d 737, 740 (1989)(citations omitted).  A

condition on performance affects only when performance is due under the contract, not whether the

contract is formed in the first place.  See id.  If a performance condition fails, then this failure may lead

to breach of contract; the failure does not prevent the contract from arising in the first place.  See id.

In contrast, the failure of a condition precedent to formation means that the contract never existed at

all.  See id.  Whether a condition precedent modifies formation or performance must be determined

"by the intent of the parties."  Id. (citations omitted).

      Looking at the ESA, the Court is inclined to believe that the express condition precedent

controls performance rather than formation.  The ESA states that

> the express condition precedent to any and all provisions in the [ESA] is compliance
> with and the fulfillment of all terms and conditions of the Permit, and therefore, should
> the Pueblo for whatever reason, or no reason, terminate the Permit, [Bar J] and
> [Western Mobile] will be bound to the terms of [the ESA] only to the last date the
> Permit is in effect.

ESA at 2.  The ESA states that the parties are bound to the ESA only until the Permit is no longer "in

effect." Id.  This wording indicates that the ESA exists and binds both parties until the Pueblo terminates the Permit.  Because the ESA appears to be in effect until a condition precedent fails because of the Pueblo's actions, the condition precedent seems to qualify performance rather than formation.

If the condition modified performance, Bar J would not have to prove satisfaction of the condition to prove a valid contract.  Instead, the Defendants would have to show that a failure of the condition excused their performance under a valid contract.  Seen in this light, the failure of the condition would be a defense to and not an element of Bar J's prima facie case of breach of contract. The New Mexico courts' repeated references to the failure of an express condition as a defense rather than as an element of a breach of contract action strengthen the conclusion.  See Fidelity Nat'l Bank v. Tommy L. Goff, Inc., 92 N.M. 106, 106, 583 P.2d 470, 471 (1978); First Nat'l Bank v. Wood, 86 N.M. 165, 166, 521 P.2d 127, 128 (1974); Pillsbury v. Blumenthal, 58 N.M. 422, 424, 272 P.2d 326, 327 (1954).

Even though this potential defense may raise issues of federal law, these issues do not appear on the face of Bar J's Complaint.  As a potential federal defense, the failure of the performance condition does not give rise to federal question jurisdiction under the well-pleaded complaint rule.  See Caterpillar, Inc. v. Williams, 482 U.S. at 392.  Even if Bar J had denied in its Complaint that the condition precedent had been satisfied, this anticipation of the Defendants' federal defense would not be enough to confer jurisdiction on this Court.  See id. at 393.

The Defendants maintain that a second federal issue appears on the Complaint's face: whether the ESA validly assigned the Permit to the Defendants.  See Response at 4-5. The Defendants characterize the ESA as an assignment of the Permit by Bar J to the Defendants.  See id.  Under

-14-

federal regulations, an assignment of the Permit would be invalid without approval by the Secretary of the Interior.  See id.  To determine whether the ESA's assignment complied with federal law, the Court must examine federal requirements for assignments, thereby deciding a federal question.  See id.

The Defendants' argument overlooks a critical step in the search for a federal question because the Defendants ignore what the Complaint actually states.  Nowhere does the Complaint assert that the ESA effected or attempted to effect an assignment of the Permit.  See generally Complaint.  According to the Complaint, the ESA merely provided for the Defendants' purchase of "*all* of Bar J's sand and gravel mining equipment" and "all aggregates."  Id. ¶ 8, at 2 (emphasis in original).  Also, the Defendants would "provide the personnel and equipment necessary to mine the aggregates."  Id.  The ESA also described payment schedules.  Id. ¶¶ 9-10, at 2.

The Defendants object that the Complaint's failure to plead that the ESA was an assignment should have little bearing on the Court's decision on federal question jurisdiction because of the artful pleading rule.  See Response at 2.  The artful pleading rule instructs that "a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim."  Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996)(citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. at 22).  The Defendants allege that Bar J has simply pled around the assignment issue, which is an essential element of establishing that a valid contract existed between the parties.  See Response at 2.  Furthermore, the Defendants state that Bar J should have included a copy of the Permit in the copy of the ESA attached to the Complaint as an exhibit because the Permit was attached to the actual ESA itself.  See id. at 4 n.1.

The Supreme Court, however, has emphasized that a defendant cannot manufacture grounds

-15-

for removal by "ignoring the set of facts . . . presented by [the plaintiffs], along with their legal characterization of those facts, and arguing that there are different facts [the plaintiffs] might have alleged that would have constituted a federal claim." Caterpillar, Inc. v. Williams, 482 U.S. at 396-97. The Defendants must ground their claim of federal question jurisdiction on those facts actually alleged in the Complaint. See id. at 397 (warning against "justify[ing] removal on the basis of facts not alleged in the complaint"). The Court cannot consider all of the *possible* Complaints that Bar J might have filed, including one based on a theory of assignment, but must instead examine only the Complaint that Bar J actually filed. See id. at 396-97. In this case, Bar J filed a Complaint that asks for redress of a breach of contract, not for vindication of any assignment. See generally Complaint.        While the Defendants may have wished that Bar J had attached a copy of the Permit, plaintiffs generally do not have to structure their lawsuits in the way that is most advantageous to defendants. Simply put, Bar J is under no obligation to make the Defendants' lives any easier by pleading facts that will make it harder on Bar J to prevail. Moreover, given that the ESA itself proclaims that it in no way assigns the Permit, Bar J appears justified in its choice of leaving out the Permit and not raising any issue about assignments. See ESA at 1.

The Defendants also refer to rule 10(c) of the Federal Rules of Civil Procedure to attempt to justify their reliance on this extraneous document. See Response at 4 n.1. Inasmuch as Bar J filed its suit in state court, federal pleading requirements are not controlling. And even if the state rules and the federal rules are the same, or if the federal rules controlled the complaint, rule 10(c) in the federal rules does not say anything about adding allegations or exhibits to the Complaint. Rule 10(c) says that whatever is attached is attached for all purposes. The rule provides no support for an effort to revise the Complaint to fit the Defendants' needs.

-16-

The Defendants also cite to rule 106 of the Federal Rules of Evidence, which provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106.  Apparently, the Defendants would like this rule to mean that they can require Bar J to attach the entire ESA, including the Permit.  Bar J, however, has not attempted to introduce the ESA into evidence, but has merely attached it to the Complaint.  Also, the Defendants already have a copy of the Permit and have brought it before the Court for its consideration, thus necessitating no need to acquire it from Bar J.

Finally, the Defendants cite rule 1-009(I) of the New Mexico Rules of Civil Procedure, which states that "[w]hen any instrument of writing upon which the action or defense is founded is referred to in the pleadings, the original or a copy thereof shall be served with the pleading, if within the power or control of the party wishing to use the same."  As explained above, Bar J does not ground its breach of contract claim on a valid assignment of the Permit and so, according to the terms of the rule, Bar J need not file a copy of the Permit.

Even if this state rule of civil procedure or some other rule of law required Bar J to attach the Permit, the Defendants do not adequately explain how this document would alter the outcome of the motion to remand.  An attached Permit would not change the Complaint's basic nature, which is one for breach of contract.  Instead, it might give rise to the defense that the required approval of the Secretary of the Interior for any assignment was not forthcoming, but that defense can not crawl under the fence of the well-pleaded complaint rule and give rise to a federal question.

II.    **THE SUPREME COURT'S DECISION IN <u>GRABLE</u> DOES NOT CHANGE THE
<u>RESULT IN THIS CASE.</u>**

The Defendants contend that the Supreme Court's recent decision in <u>Grable</u> supports their
position. In <u>Grable</u>, the Internal Revenue Service seized land belonging to Grable because of a federal
tax deficiency and sold the property to Darue. <u>See</u> 125 S. Ct. at 2366. Grable then sued in state court
to quiet title to the land because the IRS had allegedly failed to give Grable the requisite notice of
seizure as laid out in 26 U.S.C. § 6335. <u>See id.</u> Darue thereafter removed the case to federal district
court, invoking federal question jurisdiction on the ground that "the claim of title depended on the
interpretation of the notice statute in the federal tax law." <u>Id.</u> The district court refused to remand
the case to state court, ruling that the "claim does pose a significant question of federal law." <u>Id.</u> The
Court of Appeals for the Sixth Circuit affirmed the district court's ruling. <u>See id.</u>

The Supreme Court upheld the Sixth Circuit's ruling and found that Darue properly called
upon federal question jurisdiction in removing from the state court. <u>See id.</u> The Supreme Court
concluded that the state-law quiet title claim "necessarily raise[d] a stated federal issue, actually
disputed and substantial, which a federal forum may entertain without disturbing any congressionally
approved balance of federal and state judicial responsibilities." <u>Id.</u> at 2368. Grable "premised its
superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law." <u>Id.</u>
The United States had a "strong interest" in the case because it involved the "prompt and certain
collection of delinquent taxes." <u>Id.</u> (citing <u>United States v. Rodgers</u>, 461 U.S. 677, 709 (1983)).
Finally, exercising jurisdiction over Grable's quiet title suit would not upset the proper division of
federal and state judicial responsibilities because very few quiet title cases would raise such contested
federal questions. <u>See id.</u> at 2371.

-18-

Similarly, the Defendants argue that the issue whether the ESA validly assigned the Permit is the central issue of Bar J's claim.  <u>See</u> Response at 9.  The United States, the Defendants believe, has an "interest in ensuring that Indian lands are not exploited."  Response at 11.  Finally, the Defendants conclude that a federal district court exercising jurisdiction over this case would not upset the congressionally envisioned separation of federal and state judicial duties because Congress created a complex regulatory scheme involving these permits to ensure federal oversight of these issues.  <u>See id.</u>

The Court disagrees with the Defendants' analogy to <u>Grable</u> because there is no necessary and substantial question of federal law in the instant case.  Grable's claim to its land depended on the interpretation and application of the federal notice statute.  <u>See</u> <u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u>, 125 S. Ct at 2368 ("Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law.").  Grable asserted that it had a right to the title because of 26 U.S.C. § 6335.  <u>See id.</u>

Unlike Grable, Bar J does not premise its breach of contract claim on any point of federal law.  Bar J does not assert that it has a right to recover from the Defendants because of the existence of some federal law.  <u>See</u> <u>McCready v. White</u>, 417 F.3d 700, 2005 U.S. App. LEXIS 15833 (7th Cir. August 2, 2005)(finding it "not hard to see a source of federal jurisdiction" because the plaintiff charged that 18 U.S.C. §§ 2721-25 required the defendant to release records in its possession).  Bar J argues neither that the Defendants violated a federal statute nor that the ESA's validity requires the interpretation or application of any provision of the United States Code.  <u>See also</u> <u>Broder v. Cablevision Sys. Corp.</u>, 418 U.S. App. 187, 2005 U.S. App. LEXIS 16811, at *13-14 (2d Cir. August 11, 2005)(dispelling any doubt that the plaintiff raised a necessary and substantial question of federal law

based on the fact that the plaintiff requested a declaratory judgment "establishing that [the defendant's] actions violated, inter alia, 47 U.S.C. § 543(d)"); Becnel v. KPMG LLP, 2005 U.S. Dist. LEXIS 17905, at *5-6 (W.D. Ark. June 21, 2005)(recognizing the presence of a necessary and substantial question of federal law because "[i]n order for Plaintiffs to prevail on their state law claims, a determination must be made as to the legitimacy" of certain investment programs and "the only way to determine whether [the programs] are legitimate is to interpret the relevant portions of the United States Code relating to them").  Although one court has acknowledged that "substantial federal funding provisions" may give rise to federal question jurisdiction, no federal funding provision of any nature, substantial or not, is evident in this case.  In re Zyprexa Products Liability Litigation, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. July 1, 2005).

Instead, Bar J grounds his right to relief in basic state contract law.  To prevail, Bar J merely has to show that the common law elements of breach of contract have been met without referencing any federal law.  Without a necessary and substantial question of federal law, federal question jurisdiction does not arise.

The Defendants object that Bar J actually does need to prove an assignment occurred which complied with federal law to recover and that the only reason that this does not appear in the Complaint is that Bar J pled around it.  See Response at 2.  As explained above, the Defendants do not illuminate why Bar J would plead that the ESA validly assigned the Permit given that Bar J does not assert that there was an assignment at all.  Also, to the extent that the validity of an assignment is at issue in this case, it exists only because the Defendants have raised it as an issue, which is not enough under Grable to satisfy federal question jurisdiction.  See Kentucky v. China Tobacco Anyang Cigarette Factory, 2005 U.S. Dist. LEXIS 16606, at *8-9 (E.D. Ky. August 4, 2005)("[A]lthough it

is true that Defendant plans on raising a question of federal law, the Plaintiff has not asserted a federal

right that involves a question of federal law.")(citation omitted).

Contrary to the Defendant's contention, the Supreme Court in <u>Grable</u> did not intend to

revolutionize federal question doctrine.  <u>See</u> <u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u>, 125

S. Ct at  2371 (Thomas, J., concurring)("The Court *faithfully applies our precedents interpreting 28*

*U.S.C. § 1331* to authorize federal-court jurisdiction over some cases in which state law creates the

cause of action but requires determination of an issue of federal law." (emphasis added)).  <u>Grable</u>

expanded on the rule that has existed "for nearly 100 years that in certain cases federal question

jurisdiction will lie over state-law claims that implicate significant federal issues."  <u>Id.</u> at 2366-67

(citing <u>Hopkins v. Walker</u>, 244 U.S. 486, 490-491 (1917).  It did not overrule prior federal question

cases and carefully distinguished <u>Grable</u> from the Supreme Court's decision in <u>Merrell Dow</u>.  <u>See</u> <u>id.</u>

at 2369-71.  <u>Grable</u> did not toss the proverbial baby -- in this case the well-pleaded complaint rule --

out with the bath water.

## III.   THE COURT LACKS DIVERSITY JURISDICTION.

The Defendants have not suggested an alternative basis of jurisdiction, such as diversity

jurisdiction pursuant to § 1332.  <u>See</u> <u>generally</u> Notice of Removal and Response.  If they did attempt

to invoke diversity jurisdiction, the attempt would be unavailing because complete diversity does not

exist between the parties.  Lafarge Southwest operates businesses in New Mexico, and Bar J is a New

Mexico corporation with its principal place of business in Albuquerque, New Mexico.  <u>See</u> Complaint

¶¶ 1, 3, at 1.

## IV.   BAR J IS ENTITLED TO ATTORNEY'S FEES.

Bar J also seeks recovery of costs and attorney's fees pursuant to 28 U.S.C. § 1447(c).  <u>See</u> Memorandum Brief at 13-14.  Bar J alleges that removal flew "directly in the teeth of established precedent."  <u>Id.</u> at 13.  Also, Bar J argues that removal was a delaying tactic to put off "the day of reckoning on this contract."  <u>Id.</u> at 14.

While the Defendants contend that they "acted in good faith and had a fair basis for removing this case under" <u>Grable</u>, Response at 12, Bar J is entitled to attorney's fees regardless whether the Defendants acted in bad faith,  <u>see</u> <u>Topeka Housing Authority v. Johnson</u>, 404 F.3d at 1248.  To secure attorney's fees, Bar J needs to show only that removal was improper. <u>See id.</u>  Bar J has carried its burden on attorney's fees.

**IT IS ORDERED** that the Plaintiff's Motion to Remand is granted.  The Defendants will also pay the just costs and actual expenses, including attorney's fees, incurred as a result of the removal.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Douglas A. Baker
Joe C. Diaz
Arthur D. Melendres
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

_Attorneys for the Plaintiff_

Rex D. Throckmorton

-22-

Henry M. Bohnhoff
Susan Barger Fox
Rodey, Dickason, Sloan, Akin & Robb,
Albuquerque,  New Mexico

*Attorneys for the Defendants*